IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| JOHN DOE and JANE DOE, parents and next friends of their Minor Child JAMES DOE, | |
| PLAINTIFFS | Civil Case No.  1:23-cv-00580 |
| vs. | DATE: March 3, 2023 |
| BOULDER VALLEY SCHOOL DISTRICT, WHITTIER INTERNATIONAL ELEMENTARY SCHOOL, and ROB ANDERSON, KATHY GEBHARDT, LISA SWEENEY-MIRAN, NICOLE RAJPAL, STACEY ZIS, BETH NIZNIK, KITTY SARGENT, RICHARD GARCIA, AND SARAH OSWICK, in their official capacity as state actors for the State of Colorado, | |
| DEFENDANTS. | |

## COMPLAINT AND JURY DEMAND

Plaintiffs, John and Jane Doe, next friend of their minor child James Doe, bring suit against Boulder Valley School District ("BVSD" or the "District"), Whittier International Elementary School (the "Whittier") as well as Rob Anderson, Kathy Gebhard, Lisa Sweeney-Miran, Nichole Rajpal, Stacey Zis, Beth Niznik, Kitty Sargent, Richard Garcia, and Sarah Oswick (the "Individual Defendants") in their official capacity on account of discrimination and deliberate indifference to racial discrimination against their son, James Doe.

Defendants are liable under Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d et seq.); the Due Process and Equal Protection Clause of the 14th Amendment to the United States Constitution under 42 USC § 1983; 42 USC § 1981, as well as Colorado Rev. Stat. § 24-34-601.

## PARTIES

1.      Plaintiffs John and Jane Doe are the parents of their minor child James Doe, and at all times relevant to this Complaint they have resided within the Boulder Valley School District of Colorado.

2.      Defendant Boulder Valley School District ("BVSD" or the "District") is a public school district organized under the laws of the State of Colorado, located in Boulder, Colorado, which receives federal funding.

3.      Defendant Whittier International Elementary School is a K-5 public school ("Whittier") organized under the laws of the State of Colorado and within the BVSD network or schools, located in Boulder, Colorado.  Whittier receives federal funding.

4.      Defendant Rob Anderson is the Chief Executive Officer for the Boulder Valley School District and District Superintendent.  Mr. Anderson resides in Boulder, Colorado or its environs and is sued in his official capacity.

5.      Defendant Kathy Gebhardt is the Boulder Valley School District Board of Education President.  Ms. Gebhardt resides in Boulder, Colorado or its environs and is sued in her official capacity.

6.      Defendant Lisa Sweeney-Miran is the Boulder Valley School District Board of Education Vice-President.  Ms. Sweeney-Miran resides in Boulder, Colorado or its environs and is sued in her official capacity.

7.      Defendant Nicole Rajpal is the Boulder Valley School District Board of Education Treasurer.  Ms. Rajpal resides in Boulder, Colorado or its environs and is sued in her official capacity.

8.      Defendant Stacey Zis is a Boulder Valley School District Board of Education Member.  Ms. Zis resides in Boulder, Colorado or its environs and is sued in her official capacity.

9.      Defendant Beth Niznik is a Boulder Valley School District Board of Education Member.  Ms. Niznik resides in Boulder, Colorado or its environs and is sued in her official capacity.

10.      Defendant Kitty Sargent is a Boulder Valley School District Board of Education Member.  Ms. Sargent resides in Boulder, Colorado or its environs and is sued in her official capacity.

11.      Defendant Richard Garcia is a Boulder Valley School District Board of Education Member.  Mr. Garcia resides in Boulder, Colorado or its environs and is sued in his official capacity.

12.      Defendant Sarah Oswick is the Principal at Whittier Elementary School in the Boulder Valley School District.  Ms. Oswick oversees discipline at Whittier Elementary School, resides in Boulder, Colorado or its environs, and is sued in her official capacity.

13.      All named Defendants are person acting under color of state law within the meaning of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

14.      This court has jurisdiction because Plaintiff's cause of action arises under Title VI of the Civil Rights Act of 1964, 42 U.S.C §2000d *et seq*., 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.  This Court therefore has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

15.     This court has supplemental jurisdiction over all state-law claims under 28 U.S.C. §1367(a).

16.     Venue is proper in the U.S. District Court for the District of Colorado under 28 U.S.C. 1391(b) because all Defendants reside within the jurisdiction of this Court, and a substantial part of the acts and omissions giving rise to Plaintiffs' claims took place with the jurisdiction of this Court.

## FACTS

### I.   INTRODUCTION

17.     Nine-year-old James Doe was a fourth-grade student at Whittier Elementary school, until recently, when he suffered physical assault, unfair and selectively enforced disciplinary processes, and other discrimination on the basis of race.  Whittier has created a racially hostile environment in which his further education there has been rendered impossible. James Doe is white.

18.     His initial assailant was a young black student, Sally Roe.  Her mother, Jamillah Richmond, is an employee of the District.

19.     Sally Roe choked and/or otherwise physically assaulted James Doe on at least 3 occasions.

20.     The mother used her position of authority both to shield her daughter from discipline after she physically assaulted James Doe – and not only James Doe but also numerous other children throughout the school.  In fact, there was and is a common pattern.

21.     Sally Roe attacks other children, after which she blames them for being "racist," thus excusing her own behavior. A. Grandits Aff., ¶ 10.  The District then swings into action to protect Sally Roe from any consequences, appease Ms. Richmond, and condemn the children

Sally Roe and Ms. Richmond attack as "racists."  Ms. Richmond only accuses white students of being racist.

22.     Ironically, the Doe family chose Whittier for its purported diversity, vision, and mission to "improve the world through intercultural understanding and respect."  Affidavit of Jane Roe ¶ 2.  But Ms. Richmond, and the BVSD have destroyed this vision.

23.     In the name of so-called "anti-racism," the District began to trumpet in 2020: "[W]hite members of our community cannot fully fathom the privilege that we have." Apparently, the secret to what BVSD calls "anti-racism" is "showing a willingness to feel discomfort."  Affidavit of Attorney Kellie J. Miller Aff., Ex. K.

24.     Beginning in January of 2023, Jamillah Richmond spearheaded a racially-motivated social media campaign of bullying and harassment against James Doe and his family, smearing James Doe as an "evil child," a "trash kid," and his parents as "white liberal racists"— among other racist slurs and insults.  Attorney Miller Aff., Ex. A.

25.     Instead of maintaining the confidentiality of James Doe's educational records, to which Ms. Richmond had access only through her job at Whittier, Ms. Richmond casted aside the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g; 34 CFR 99, and disclosed confidential information through her social media smear campaign against the Does.

26.     Worse, Ms. Richmond's inflammatory social media posts inspired her followers to issue threats of emotional harm and physical violence against James and his family.

27.     This travesty, in which her daughter Sally Roe is also ensnared, was reported to Whittier Principal, Defendant Sarah Oswick, and to others in the District administration. Defendants took no action to protect James Doe from Ms. Richmond's crusade.  Instead, Defendants appeased Ms. Richmond, making the hostile environment she created worse,

ostensibly to "protect" her daughter, but in actuality victimizing her as well and other, defenseless children in the name of this "social justice" crusade.

28.     Ms. Richmond continues to work in James Doe's school building.  She has access to James and other children during the school day, where she propagates race hatred, the selective enforcement of BVSD policies, and discrimination as an official policy and practice of Whittier and the District with the full knowledge and endorsement of the administration.

29.     Due to Ms. Richmond's actions, and the deliberate indifference of Defendants, including Principal Oswick and the District administration, James Doe has been constructively expelled without due process.  He can no longer safely attend school which has become a hostile environment in which it is impossible for him to learn or be safe from physical violence.

30.     Ms. Richmond's public attacks against James Doe and his family have included "warning" other parents about James' supposed evil nature.  This has caused other parents to call Whittier expressing concern that their children be exposed to James Doe.  Ms. Richmond and the Defendants have insured that James Doe is now a pariah in his own school.  One punishment Principal Oswick imposed was to separate him at recess and allow only one friend to play with him. J. Roe Aff., Ex. Q.

31.     Because of this hostile environment, the Does have kept James at home in fear for his safety and well-being.  James has not attended Whittier Elementary school since January 24, 2023.  J. Roe Aff., ¶ 3.

32.     Ms. Richmond's campaign of character assassination against this 9-year old boy not only violates Colorado and federal statutory law; it expressly violates numerous district policies.

33.     But BVSD has taken no action to protect James and his family because of the color of their skin, which is white.

34.     Instead, BVSD has privileged one Black teacher's interest in personally attacking a child for perceived (but actually imaginary) "racism."  This overrides the application of BVSD policies against harassment, bullying, and intimidation, simply because the victim, in this case, is a white student.

35.     This is illegal.  In the common-sense words of the Supreme Court: "The way to stop discrimination on the basis of race is to stop discriminating on the basis of race."  *Parents Involved in Community Schools v. Seattle School District No 1*, 127 S. Ct. 2738 (2007).  Yet BVSD has created a hostile school environment in the name of "anti-racism." It has selectively enforced its policies.  And it has failed to take even basic remedial measures to protect James Doe from racial hostility at BVSD simply because of the color of his skin.

36.     BVSD has ignored district policies and procedures, the laws of Colorado, the United States Constitution, and federal law in order to deprive James Doe of the equal benefit of all laws and proceedings for the security his person and the protection of his public education. Whittier and the District selectively apply their disciplinary processes and rules on the basis of race.

37.     The Doe's complaints to BVSD about the racial harassment, discrimination, and targeting of their nine-year-old son have resulted in no meaningful remedial measures.  He is defenseless and without protection.  He has been unable to safely attend school for over a month and continues to suffer irreparable harm due to Defendants' ongoing discrimination.

## II.  JAMILLAH RICHMOND'S ROLE AT BVSD AND WHITTIER AND THE DISTRICT'S RACIST "ANTI-RACISM"

38.     BVSD is a public educational institution and recipient of federal and state funds. BVSD has a duty to enforce the federal and state law by not enacting, imposing, operating, or maintaining policies, operations, or goals that discriminate or grant preferential or detrimental treatment to any individual or group on the basis of race, sex, color, religion, ethnicity or national origin.

39.     Whittier is an elementary school within BVSD, a public educational institution, receiving federal and state funds.  Whittier has a duty to enforce federal and state law by not enacting, imposing, operating, or maintaining policies, operations, or goals that discriminate or grant preferential or detrimental treatment to any individual or group on the basis of race, sex, color, religion, ethnicity or national origin.

40.     Jamillah Richmond works for BVSD as an employee.  She is a librarian and substitute teacher at Whittier elementary school, among other duties, and she also works for the District as a member of an Advisory Committee.  Attorney Miller Aff., Ex. C; Affidavit of Ann Grandits, ¶ 9.

41.     Ms. Richmond is the mother of Sally Roe, James Doe's erstwhile fourth-grade classmate and friend up, until the discrimination of BVSD and her mother's crusade of character assassination poisoned their childhood friendship.

42.     Both Ms. Richmond and Sally Roe are Black.  This was never, until the events pleaded here, an impediment to James Doe's friendship with Sally Roe.  However, Ms. Richmond fancies herself a social justice activist and co-founded the Parents of Color Council, a group purporting to advise the District on the discipline practices of BVSD. Attorney Miller Aff., Ex. B.

43.     Ms. Richmond is also a member of the District Accountability Committee's executive board. Attorney Miller Aff., Ex. C.

44.     Ms. Richmond has direct access to Defendant Superintendent Anderson and the BVSD School board, to whom she holds forth on racial issues and the discipline practices of the BVSD.  In this capacity she meets regularly with the Board to discuss "District Policy." *Id.*

45.     Ms. Richmond advocates for what she calls "equity" and "equitable discipline." Attorney Miller Aff., Ex. D.  This includes some admirable concepts such as "leniency" for students of color, who do appear to be disproportionately disciplined within BVSD.  Attorney Miller Aff., Ex. B.  The solution, perversely, has been to increase the punishment of innocent 9-year-olds, while, in practice, excusing the atrocious behavior of students like Ms. Richmond's daughter to render them immune from discipline for bullying others.

46.     At BVSD the custom, practice, and policy has been to define "equity" to mean something different from "equality."  Equality would mean treating all students the same, regardless of race, as is required by the Fourteenth Amendment of the U.S. Constitution, 42 U.S.C. § 1981, and the equal protection of Colorado and federal laws.  Yet "equity," by Ms. Richmond and the Defendants' logic, means using the school's authority to "challenge systems of power and oppression" and to "creat[e] counternarratives to the common habits and assumptions that inhibit inclusion." Attorney Miller Aff., Ex. K.

47.     At BVSD, "equity" and "equitably discipline" means treating students ***unequally*** to ensure outcomes that are purportedly equalized.

48.     This is because, in the words of the Ms. Richmond, "Racism … is everything." Attorney Miller Aff., Ex. E.

49.     Superintendent Anderson made "anti-racism" an official district policy in 2020.
Superintendent Anderson wrote a district-wide letter warning all parents that "white members of
our community cannot fully fathom the privilege that we have."  At BVSD, the color of your
skin is thus apparently considered to affect individuals' ability to understand social reality.
Superintendent Anderson declared that BVSD parents should discuss racism with their children
"--especially if you are white."  Attorney Miller Aff., Ex. K.

50.     In 2020, under mounting pressure from Ms. Richmond and activists led by her,
BVSD has reformed its "antiquated" discipline policies.  Attorney Miller Aff., Ex. B; Ex. K.

51.     As part of this reform, BVSD adopted "Culturally Responsive Discipline" to
impose "equity" in discipline and "reduce disparities in how students are disciplined." Attorney
Miller Aff., Ex. L.

52.     Some of these measures are admirable, in theory.  BVSD set out to instruct
educators in deescalating and resolving conflicts without resorting to punishment—although this
was never applied to James Doe, who had the wrong skin color.  Attorney Miller Aff., Ex. B.

53.     As the Does found out, "equitable" reforms to "de-escalate" and avoid resorting
to punishment, did not apply to James because he is white.

54.     The Does also learned that "Culturally Responsive Discipline" within BVSD
meant a bullying prevention approach "to make it easier for parents, ***particularly parents of
color***, to report" bullying. (emphasis added) Attorney Miller Aff., Ex. L.

55.     James Doe was punished as harshly as possible for behavior that was neither a
violation of any district policy nor broke any school rule; after which he was branded a "racist"
and a "bully," and witch-hunted out of school.

56.     By contrast, nothing happened to Sally Roe, who at one point choked James Doe until his faced turned color and had an established pattern of assaulting other children at Whittier without meaningful consequences.  A. Grandits Aff., ¶ 5, 6; J. Roe Aff., ¶ 5.

57.     Reporting Sally Roe's harassment, or bullying by her mother Jamillah Richmond did not become "easier" or "culturally responsive" because the Does are white.

58.     To be clear, it is not that lenience toward Sally Roe was necessarily wrong. The Does have never called for her punishment.  Like most rational parents of any race, they consider Sally Roe's violent outburst to be teachable moments, and they have compassion for her in her struggle to grow up.  What is illegal is Whittier's arbitrary application of its disciplinary rules without any regard to the safety of other children at the school, its targeting of James Doe, not to mention its employee, Ms. Richmond's would-be activism in spinning a defamatory false narrative accusing a child like James Doe of "evil" and "racism."

**I.   SALLY ROE'S ASSAULTS ON JAMES DOE AND PATTERN OF VIOLENT BEHAVIOR**

59.     On January 20, 2023, James Doe had a playground misunderstanding with Sally Roe, the daughter of district employee Jamillah Richmond. J. Roe Aff., Ex. N.

60.     It is known to all Defendants and throughout Whittier and the District that Sally Roe struggles with impulse control.  She frequently hits, kicks, and has even chokes or strangles other students.  A. Grandits Aff., ¶ 5.

61.     Sally Roe has a documented history of violence.  These are not "microaggressions."  These are real aggressions.  Sally Roe has both strangled and struck James Doe.  A. Grandits Aff., ¶ 5, 6; J. Roe Aff., Ex. O.

62.     Upon information and belief, Sally Roe has faced no discipline from BVSD for her violent attacks on James Doe or on other children.

63.     The teachers at Whittier Elementary School and Principal Oswick are well aware of Sally Roe's pattern of behavior, having actual knowledge of her assaults on other children, and have even developed a protocol to deal with Sally Roe's violent outbursts. A. Grandits Aff., ¶ 5.

64.     This protocol involves sending Sally Roe to the office after one of her violent attacks.  There she then writes a "reflection paper" on the incident. A. Grandits Aff., ¶ 8.

65.     On January 17, 2023, Sally Roe strangled James Doe, putting him in a choke hold with her arm around his neck.  A. Grandits Aff., ¶ 6; J. Roe Aff., Ex. P.

66.     BVSD admits that "There is no dispute that [Sally Roe] placed [James Doe] into a headlock/choked him." J. Roe Aff., Ex. P.

67.     James Doe was sent to the school nurse for medical attention. J. Roe Aff., ¶ 4.

68.     At the same time Sally Roe was sent to the office, which followed its usual protocol for Sally Roe after she engaged in violent behavior. A. Grandits Aff., ¶ 8.

## III.     Ms. Richmond's Pattern of Accusing Children of "Racism" to Shield Her Daughter

69.     At the time that Sally Roe's strangled James Doe, and for many weeks thereafter, BVSD did not initiate a bullying report or any other disciplinary action against Sally Roe.

70.     In fact, Principal Oswick was not even made aware of Sally Roe's violent attack on James until several days later.  J. Roe Aff., Ex. P.

71.     After school that day, fourth grade teacher Andee Grandits informed Jamillah Richmond, Sally Roe's mother, about the attack. A. Grandits Aff., ¶ 9.

72.     It was not the first time Sally Roe had assaulted another student.  Unfortunately, this was an all-too-common occurrence. A. Grandits Aff., ¶ 5, 7, 10.

73.     Initially, Sally Roe's mother, Jamillah Richmond, reached out to James' mother, Jane Doe, and apologized for the attack. J. Roe Aff., ¶ 5.

74.     Yet, unfortunately, part of the pattern of behavior that Ms. Richmond has encouraged in her daughter includes Sally Roe turning around and accusing the students she assaults of "racism," which her mother, as an "activist," then validates and encourages.

75.     No sooner did events take this turn, than Ms. Richmond switched her focus from reprimanding her daughter to attacking James Doe as a "racist."  Ms. Richmond quickly swapped her apology to the Doe family for scorn and baseless accusations.

76.     The teachers of Whittier are well aware of this pattern of behavior by Sally Roe. A. Grandits Aff., ¶ 10, 11.  It is a well-known pattern.  *Id*.

77.     Predictably, and in line with her usual pattern, just days after Sally Roe strangled James Doe, Sally Roe turned around and accused James of "racism."  The catalyst was a subsequent incident on the playground.

### IV.    MS. RICHMOND ELEVATES A PLAYGROUND MISUNDERSTANDING TO AN "ANTI-RACIST" CRUSADE AND WHITTIER'S PRINCIPAL ENDORSES IT.

78.     At lunch recess on January 20, 2023, James Doe suggested a role-playing game with Sally Roe and another Black fourth-grade student of Whittier, Student C.  J. Roe Aff., Ex. N.

79.     As part of a lunch recess game, James asked Sally Roe and Student C to be his "servants and bodyguards." *Id.*  There was no racial slur used. In fact, in Colorado, which was never a slave state, there is little tradition of relegating Black Americans to the role of servants.

80.     But Sally Roe decided to take offense at this playground role-playing game, even though it had no racialized content. She reported James Doe to BVSD for "racism." *Id.*

81.     Whittier Principal Sarah Oswick swung into action.  Sally Roe's frequent reports do not normally result in an official bullying report. A. Grandits Aff., ¶ 14.

82.     Here, Principal Oswick initiated a bullying report and formal discipline process against James Doe after regularly looking the other way at Sally Roe's bad behavior. A. Grandits Aff., ¶ 8, 14.

83.     Principal Oswick never initiated this discipline process against Sally Roe for her violent attacks on James Doe. J. Roe Aff., ¶ 7; A. Grandits Aff., ¶ 8.

84.     When interrogated in the discipline process, James said the idea to role play on the playground came from their classroom's current study of servants in Colorado history. J. Roe Aff., Ex. N.

85.     Because Colorado was never a slave state, this obviously had nothing to do with Black slavery or the subjugation of Black Americans.

86.     As the discipline process eventually expressly found, James did not intend to offend with his simple child's play among 9-year-olds.  J. Roe Aff., Ex. N. He apologized to Sally Roe and Student C for having said something that they interpreted as hurtful. Id.

87.     Principal Oswick expressly found that James did "not intend to hurt others" with the playground game suggestion. Id.

88.     Yet Principal Oswick worked with Ms. Richmond and her daughter to embellish the playground game suggestion into a formal bullying incident and report. Id.  At Whittier it is not bullying to physically assault a child or choke a child; but Principal Oswick does consider it "bullying" to suggest a role-playing game that Jamillah Richmond and her daughter imagined to be "racist."

89.     BVSD maintains policies that Ms. Richmond had lobbied for in her executive role on a District Advisory Committee and through her leadership of the Students of Color group. The policies that the District adopted and for which Ms. Richmond advocated were expressly intended to "de-escalate" and avoid resorting to punishment.  As it turned out, Whittier only applies these policies to "people of color." But James Doe was white, so the District did not apply these new policies to him.

90.     This bizarre reaction at Whittier was limited to Jamillah Richmond and her daughter.   Student C, who is also Black, wanted no further follow up about the incident. *Id.*

91.     Days after notifying the Does of the playground incident, Oswick escalated the matter by permitting Sally Roe and Ms. Richmond to add additional false and unrelated allegations to the report. *Id.*

92.     These allegations included that months prior, James had supposedly made comments about Sally Roe's natural hair looking "like rats were coming out of it" and that James was "bragging about being rich" because he had helped to pay for his own pair of Air Jordan shoes. *Id.*

93.     Any reasonable investigation of these allegations would have revealed that, in fact, it Sally Roe had told James that ***his*** long and untamed hair looked like "a rats nest" and that James had, on one occasion, responded in kind.  J. Roe Aff., ¶ 6.

94.     Any reasonable investigation would have also revealed that it was Sally Roe who wrote an apology to James for her comments about him and his Air Jordan's.  J. Roe Aff., Ex. O. This apology included an apology for another assault on James Doe.  *Id.*

95.     Moreover, among nine-year-old fourth graders, such comments are not uncommon and hardly indicate "racism," either on the part of Sally Roe or James Doe.

96.     But Whittier and Principal Oswick were not interested in reasonable investigation. In addition, BVSD failed to notify James or his parents of these additional allegations, and so provided no meaningful opportunity to respond to Sally Roe's newest, at best misconstrued and at worst false reports. J. Roe Aff. ¶ 8.

97.     More importantly, a reasonable investigation would have also shown that Sally Roe had physically assaulted James Doe on at least three separate occasions, including strangling him, which once required a trip to the school nurse. J. Roe Aff., Ex. O, Ex. P.

98.     But BVSD undertook no such reasonable investigation.

99.     BVSD did not interview Ann "Andee" Grandits, the teacher for both James Doe and Sally Roe, who could have testified to the students' relationship and patterns of behavior. A. Grandits ¶ 15.

100.    Ms. Grandits was not asked any questions as part of Oswick's "investigation" into this incident.  A. Grandits ¶ 15.

101.    Rather than investigate, BVSD just kept piling up new and ever more wild allegations by Sally Roe in the bully report. J. Roe Aff., Ex. N.

102.    Sally Roe next falsely claimed that James had ripped up her artwork and whispered in her ear "you will die at 9:30." J. Roe Aff., Ex. N.

103.    Of course, there was no witness or evidence verifying such astounding claims of death threats other than Sally Roe's say-so.

104.    James Doe denies these wild and false allegations. Unlike Sally Roe, James Doe has no discipline history to indicate such bizarre behaviors were likely to have occurred.  J. Roe. Aff., ¶ 10.

105.     By contrast, Sally Roe has an extensive history of false reports to school administrators as well as violent attacks against James and other students. A. Grandits ¶ 5, 6, 8, 10, 11, 21-23.

106.     Nevertheless, BVSD added Sally Roe's new allegations, including the death threat, onto the "Bullying Investigation and Outcome Report" without investigating anything or even providing James' family a meaningful opportunity to respond.  J. Roe Aff., Exhibit N.

107.     The wild and false allegation that James Doe had issued a death threat was provided to Ms. Oswick on the morning of January 24, 2023.  And that very morning, she added it into the Outcome Report without any critical inquiry.  J. Roe Aff., ¶ 9; Ex. N.

108.     BVSD then issued a "Bully Investigation and Outcome Report" holding that the "The allegation of harassment or bullying on the basis of race (and disability and class) is founded," J. Roe Aff., Ex. N, and widely circulated the report to BVSD staff. J. Roe Aff., Ex.R.

109.     BVSD credited every accusation of a student known to fabricate threats, adding each accusation to its "investigative report" as if they were unqualified truths. J. Roe Aff., Ex. N.

110.     In the process, BVSD grossly disregarded its own policies and procedures.

111.     BVSD's disregard of its policies was on the basis of race. BVSD disregarded its policies and procedures in order to treat the white student and his family in an entirely different manner than the Black student and her family.

112.     BVSD's policies define "bullying" as actions with an "***intent*** to coerce, intimidate or cause any physical, mental, or emotional harm to any student."  (emphasis added). Attorney Miller Aff., Ex. F.

113.     The "investigation" found James "***did not intend to hurt others***."  (emphasis added) J. Roe Aff., Ex. N.

114.     But it is part of the so-called "anti-racism" peddled by Ms. Richmond and her social justice activism, and endorsed by BVSD as a public school, that intent does not matter; what matters is only the subjective impact on the Black student, however misconstrued.

115.     In keeping with this ideology, Principal Oswick disregarded the clear language of the policy and upheld the bullying allegation as "founded" because "the incident" had a "significant impact on families/Students [Sally Roe] and [Student C], *even if [James Doe] did not intend to hurt others*." J. Roe Aff., <u>Ex. N.</u>

116.     Principal Oswick even consulted with the district equity counsel and her supervisor prior to disregarding district policies and issuing a result that the bullying accusation was "founded." J. Roe Aff., <u>Ex. R</u>.

117.     Oswick also disregarded BVSD's due process requirements for accusations of bullying.  BVSD's due process require BVSD to "Meet with the alleged bully(s) individually" and "Inform them of the allegations" and "[a]sk: for a detailed account of what happened; for names of witnesses; a response to the allegations (if appropriate); what outcome the student would like to see; if the student is in fear or apprehensive about attending school/class/activity…". Attorney Miller Aff., <u>Exhibit G</u>.

118.     Principal Oswick provided no meeting to inform the Does of the allegations and provided them no meaningful opportunity to respond, as specified in District Policy JDHB-E. Attorney Miller Aff., <u>Exhibit G;</u> J. Roe. Aff., ¶ 8.

119.     Oswick also bypassed the requirement to "investigate information from alleged victim(s) and alleged bully(s), including interviewing all relevant witnesses." Attorney Miller Aff., <u>Ex. G</u>.

120.    By way of example, Principal Oswick did not interview the teacher of Sally Roe and James Doe about any of the allegations, nor did she interview the Doe family about the additional allegations Sally Roe continued to add to the report. A. Grandits Aff., ¶ 15;  J. Roe. Aff., ¶ 8.

121.    The January 28, 2023 Support Plan states that "[James Doe] was found to have made discriminatory comments to two students per the bullying investigation outcome report dated 1/2023." J. Roe Aff., Ex. Q.

122.    The goal of the Support Plan was "for [James] to understand discriminatory comments to prevent him from making them." J. Roe Aff., Ex. Q.

123.    Upon information and belief, after Sally Roe's violent attacks against James Doe no "Support Plan" was issued for Sally Roe to help her "understand" her behavior and prevent her from future attacks on her fellow students.  No District report or "plan" labeled Sally Roe or Jamillah Richmond's false allegations as "discriminatory."

124.    James Doe's Support Plan required "[w]eekly counselor check-in and education session on discriminatory comment prevention."  J. Roe Aff., Ex. Q. The District banished James Doe to recess "at the alternate playground" from the other students used at the school. *Id.*

125.    The Support Plan allowed one exception to this management: James could bring one friend to the alternate playground.  *Id.*

126.    The Support plan also required James to change classrooms in the middle of his academic year, leaving his classroom teacher and moving to another fourth-grade class at the school. *Id.*  At Whittier, choking or assaulting other children calls for "restorative justice," but devising playground games with no connection to "racism" calls for banishment, if the student is white.

127.    As if the playground ostracization and weekly counseling for a nine-year-old boy were not absurd enough, forcing James to switch classrooms in the middle of the year was disruptive to his education. A. Grandits Aff., ¶¶ 18-19. J. Roe Aff., ¶ 15.

128.    And so unusual that James' former teacher, Andee Grandits, during her 18-year teaching career, has never seen a student forced to change classrooms as a punitive measure. A. Grandits Aff., ¶ 19.

129.    BVSD then circulated the "Bully Investigation and Outcome Report," containing both misrepresentations and false, uninvestigated accusations, to third parties, including Ms. Richmond.  J. Roe Aff., Ex. R.

## V.    WHITTIER AND THE DISTRICT VIOLATE FERPA AND MS. RICHMOND DISCLOSES CONFIDENTIAL INFORMATION VIA SOCIAL MEDIA

130.    On January 22, 2023, Ms. Richmond, employee and teacher at Whittier, took the false narrative about James Doe to social media. Ms. Richmond posted numerous false and defamatory statements about James Doe and his family on Facebook. Attorney Miller Aff., Ex A.

131.    Among Ms. Whittier's incendiary statements, she singled out James Doe and his family on the basis of race:

> This singular child has said numerous racist and ableist[1] comments to Black children for months.  His parents are called each time (as is the standard operating procedure). His parents are the type of white people that go to DEI meetings and call themselves Democrats and allies.  Nice white liberal racists who smile at you and go to meeting[s] but don't actually do anything tangible is who they are, their child is simply more honest…This boy knows exactly what he's saying and I'm disgusted with the lot of them. *Id.*

---

[1] "Abelism" is a contemporary bugaboo of "social justice" activists who claim it is wrong to value "able bodied" individuals which is supposedly derogatory to the allegedly disabled; that is, it is prejudice and discrimination to prefer capable, able persons for a given task, regardless of whether or not a "disabled" person possesses the skills or capabilities for the task.

132.     Ms. Richmond also called James Doe's parents' actions "child abuse." *Id.*  As everyone at Whittier knew, including Ms. Richmond, James Doe had not "said numerous racist" comments and he and his family had not been "called each time."  Even if this was the case, such reports would be subject to the District's confidentiality requirements and FERPA, and thus would be confidential.  Ms. Richmond not only made things up but she also flagrantly violated the confidentiality of a defenseless nine-year-old boy's educational records.

133.     A mob erupted among Richmond's followers alleging that James should not be "in the presence of our kids to expose them to such ignorance." Attorney Miller Aff., <u>Exhibit A</u>.

134.     James was chastised for his "horrific behavior." *Id.*

135.      Ms. Richmond, as a Whittier employee, incited racial insults, which spewed forth through her social media, especially Facebook.  This included the statement that "[s]ome white people are just trash and make trash kids." *Id.*

136.     Others thought Ms. Richmond should make "their [Doe's family's] baby cry." "Their" clearly referred to the Does. *Id.*

137.     Others called for violence.  Ms. Richmond's "activist" community produced comments urging that James Doe be slapped, hit, or otherwise physically assaulted. *Id.*

138.     The call for violence received "loves" from Ms. Richmond's audience. *Id.*

139.     Ms. Richmond has a Facebook following of over 2700 people. *Id.*

140.     Ms. Richmond did not name James directly in the post, but it was common knowledge among Whittier parents that the post targeted James Doe and his family. A. Grandits Aff., ¶ 29.

141.     Ms. Richmond also threatened to call and directly warn the parent of a Black child in James Doe's new class about James Doe. A. Grandits Aff., ¶ 25.

142.     In response to Ms. Richmond's Facebook post and phone calls, parents began calling the school counselor, Annie Dornbush, to express concerns about James Doe.  A. Grandits Aff., ¶¶ 30-31.

143.     James Doe's teacher reached out to James's mother, Jane Doe, to inform her that Jamillah Richmond was calling other parents to warn them about James Doe.  J. Doe, Aff., ¶ 13.

144.     James Doe's teacher was concerned that a district and school employee would publicly attack a nine-year-old student and his family, and so reported her concerns to Principal Oswick. A. Grandits Aff., ¶ 32, 34.

145.     Nothing came of this report and no investigation was held of Ms. Richmond as a rogue employee. Where James Doe's schoolyard comments were willfully misconstrued as somehow "racist" comments about Black Americans, Ms. Richmond's overt, racist statements and attacks against a helpless nine-year-old white child were ignored. A. Grandits Aff., ¶ 33.

146.     Worse, Principal Oswick made James Doe's teacher feel that she had done something wrong in reporting the bullying of James Doe and reporting the racially hostile environment that Whittier and the District now encouraged. A. Grandits Aff., ¶¶ 33-34.

147.     BVSD's social media policies for employees specify:

> [o]nline or electronic conduct resulting in a negative impact to the educational environment or other conduct in violation of District policy may form the basis for disciplinary action, up to an including termination, and/or criminal or other legal action.  Attorney Miller Aff., Ex. H.

148.     District and school employee Ms. Richmond's posts, targeting a nine-year old-student and his family with racial stereotypes and insults, undeniably had a negative impact on the educational environment of James Doe. BVSD took no action to protect James.  J. Roe Aff., Ex. R.

149.    The district has refused to instruct Ms. Richmond to remove her post (which would have eliminated the harassing messages of her followers).  J. Roe Aff., Ex. R.

150.    Rather, the District suddenly announced that it cared about the First Amendment, defending the direct harassment and defamatory statements by its employee in disclosing confidential educational records of sensitive school discipline by its employee Ms. Richmond as "free speech."  J. Roe Aff., Ex. R.

151.    BVSD also has a "Cyberbullying Policy":

> . . . the use of communication technologies…to support deliberate and hostile behavior intended to do harm to others….Examples of cyberbullying can be in the form of….use of any social media platform. Attorney Miller Aff., Ex. F.

On its face, Ms. Richmond's defamatory and false statements online violated this policy.

152.    Upon information and belief, despite multiple reports by the Does and their attorney of the cyberbullying of Ms. Richmond, no cyberbullying report was filed regarding Ms. Richmond's January 22, 2023 Facebook post.

153.    BVSD's "Suspension and Dismissal of Support Staff Members" policy states that an employee can be dismissed for "just cause," defined as:

> (4) Discourteous, offensive, or abusive conduct or language towards other employees, students, or the public; (5) Unethical or obscene actions, gestures, or statements towards other employees, students, or any other person while on District property, during working hours, or at any time or place to the extent the conduct may adversely affect the operations of the District or the employee's fitness to perform his or her duties; (6) Dishonesty…Attorney Miller Aff., Exhibit I.

154.    Ms. Richmond and her followers attacked the Does with racial slurs, alleged the Does were guilty of "child abuse" and advocated for violence against the family. Attorney Miller Aff., Ex. A.

155.    But Ms. Richmond's "dishonest," "discourteous, offensive" and "abusive conduct or language" towards James Doe and his family were not subjected to disciplinary proceedings by the district.

156.    Upon information and belief, this is because Ms. Richmond and her daughter Sally Roe are Black, and James Doe and his family are white.  There is no other explanation.

157.    BVSD policies also define "just cause" for employee dismissal as "conduct by an employee at any time or in any place which may adversely affect the health, safety, or welfare of students…" Attorney Miller Aff., Ex. I.

158.    Ms. Richmond's conduct has adversely affected the health, safety, and welfare of James Doe and his family. J. Roe Aff., ¶ 13.

159.    James Doe has been unable to attend Whittier Elementary school, the school he has been enrolled at for his entire academic career, for over a month.  Both James Doe and his family have suffered emotional harm and other damages as a result of Ms. Richmond's conduct. This includes his constructive expulsion, denying James Doe the benefit of his property right in a free, public education in the state of Colorado.  It is more important to the District to kowtow to Ms. Richmond's purported "social justice" activism.

## VI.    BVSD AND WHITTIER DO NOTHING TO ADDRESS MS. RICHMOND'S RACIST ATTACKS ON JAMES DOE.

160.    BVSD has taken no action against – Ms. Richmond.  J. Roe Aff., Ex. T.  The Doe family has repeatedly requested that the District instruct her to remove her social media posts and issue a formal no-contact order between her and James Doe. Attorney Miller Aff., Ex. J.

161.    The Does through Counsel specifically asked for a formal no-contact order between Ms. Richmond and James Doe, but BVSD refused.  The District alleged it was still

"investigating" the incident.  Attorney Miller Aff., Ex. J.  But when investigating imaginary inferences of "racism" against James Doe., Oswick had acted immediately.

162.    BVSD's "investigation" into James Doe's playground game and the subsequent false allegations against him lasted only a few days.  False allegations were incorporated into the final report against James Doe in a matter of hours. This resulted in a playground banishment, a forced transfer to a separate class, a no contact order and, eventually, James Doe's constructive expulsion.

163.    But where there is real evidence of overt racist attacks against a defenseless nine-year-old boy, BVSD dragged its feet *for weeks* in "investigating" Ms. Richmond's social media publication of racial slurs, breach of confidentiality, racially charged language, and threats of emotional harm and physical violence to James Doe and his family.

164.    BVSD has refused to take any reasonable remedial measures to protect James Doe from the racially hostile environment at Whittier.

165.    On January 24, 2023, distraught at the ongoing escalation and fearing for their son's safety, the Does removed James from school. J. Roe Aff., ¶ 4.

166.    The Does voiced numerous complaints to Ms. Oswick about Ms. Richmond, the hostile environment facing their son and family, the false and uninvestigated allegations in the Bullying, Investigation and Outcome Report, and the extremely punitive "Support Plan." J. Roe Aff., Ex. R; Ex. Q; Attorney Miller Aff., Ex. J.

167.    In a January 27, 2023 email to Ms. Oswick, Jane Doe directed Ms. Oswick to Jamillah Richmond's social media thread about James Doe, and expressed concerns about James' safety and Ms. Richmond's access to him while at school. J. Roe Aff., Ex. R.

168.    Ms. Richmond not only worked in the library, having access to James Doe every week, but she also served as a substitute teacher in James Doe's class. A. Grandits Aff., ¶ 9.

169.    The Does met with Oswick at the school on January 25, 2023.  J. Roe Aff., Ex. R; A. Grandits Aff., ¶ 20.

170.    Jane Doe reached out to Oswick again that evening, writing, "if she's [Jamillah Richmond] is as triggered as you say she is then, I don't think it's safe for [James] to be around her." J. Roe Aff., Ex. R.

171.    Oswick refused to initiate a bully report or take any other action to protect James from Ms. Richmond.  When James suggested a playground game that intentionally offended Sally Roe, Whittier did not care about the First Amendment or freedom of expression.  But where Defendants were called upon to stop racist attacks by its own employee against a defenseless nine-year-old, Oswick defended Ms. Richmond's right to "free speech."

172.    In addition, Oswick threatened further retaliation against James Doe.  J. Roe Aff., Ex. R.  Oswick responded to Jane Doe's email (on January 27, 2023) writing, "I do not have a formal report that [James] did ***anything else*** to [Sally Roe] but plan to ask that question as ***I have also heard that is a possibility***."  (emphasis added). *Id.*  Thus the absence of "anything else" against a defenseless white child is enough to threaten an investigation; the overt presence of racial harassment of a white child is, however, not enough to instigate any corrective measures.

173.    As it turned out, the "anything else" to which Oswick was referring was another false allegation by Sally Roe, this time manufactured after James Doe was not even in school due to the hostile environment and concerns for his safety.

174.    The incident was alleged to have occurred when the Does met with principal Oswick on January 25, 2023.  James sat in the waiting area of the office.  A. Grandits Aff., ¶¶ 20-24.

175.    While waiting, Sally Roe entered the school office area to call her mother because she was upset about another, unrelated matter. *Id*.

176.    Teacher Ann Grandits was with Sally Roe and James in the office area. She directly witnessed Sally Roe approach James and say "hi" to him. *Id*.

177.    James Doe did not respond and the children had no further interaction. *Id*.

178.    Just after, Ms. Richmond arrived, Sally Roe once again made-up false allegations about James Doe threatening her. *Id*.

179.    Ms. Richmond expressed that she was "tired" of James' threats and that she was taking Sally Roe home. A. Grandits Aff., ¶ 24.

180.    Eye-witness teacher Ann Grandits did not see or hear any "threat" in the interaction of the children. A. Grandits Aff., ¶¶ 20-24.  Obviously, there was none.

181.    Concerned by Jamillah Richmond's Facebook post and the ongoing atmosphere of extreme hostility to the Doe family, teacher Ann Grandits used BVSD's "Safe to Tell" system to report Jamillah Richmond's bullying of James Doe. A. Grandits Aff., ¶¶ 32, 35.

182.    Her understanding was that the report would be anonymous.  She hoped that the district would intervene even if Principal Oswick would not. *Id*., ¶ 35.

183.    After she submitted the form, she was told that her report had been sent to Principal Oswick.  The report was not kept anonymous. *Id*., ¶ 36.

184.    Principal Oswick then informed her that she had received the Safe-to-Tell report and that someone from the district would be contacting her to speak about the report. *Id*., ¶ 37.

185.    While a district employee reached out to Ann Grandits about the "Safe-to-Tell" report, upon information and belief, Whittier undertook no investigation of either of Ms. Grandits two bullying reports.  When investigations are concluded and reports issued, as part of Whittier's and the District's normal policies and practices, everyone involved receives a notice of the findings.  Ms. Grandits has received no such notice. *Id.*, ¶¶ 38-39.

186.    When Sally Roe and her mother, Ms. Richmond, filed a bully report against James Doe, BVSD immediately processed that report.  Whittier credited every accusation, no matter how preposterous, made by a student known to fabricate threats.  And Whittier then added these accusations to its "investigative report" as if they were truths, finally issuing the finding that the allegations were "founded" in a matter of days (in direct contradiction to the stated findings of fact stated in the very same report, which indicated the accusations of "discrimination" in particular were not "founded" and did not satisfy the District's definitions of discrimination).  J. Roe Aff., <u>Ex. N</u>.

187.    In contrast, BVSD ignored the allegations that Ms. Richmond, a District employee, and her daughter targeted James Doe., assaulted him, and subjected him to social media mob, including threats of violence.  BVSD only responded to the Doe's entreaties once they had been forced to hire counsel.

188.    Then, BVSD alleged they are "investigating."  This lasted for weeks while James Doe suffered constructive expulsion. Attorney Miller Aff., <u>Ex. J</u>.

189.    BVSD took no reasonable measures to remedy the hostile environment Ms. Richmond created, while the District alleged it "investigate."

190.    After the Doe's counsel sent a letter to the District (February 16, 2023), Principal Oswick emailed Ms. Doe stating that she "was asked to update my Investigation Outcome

Report based on the information you all shared about the other student calling James' hair a rats nest.  Here is the updated report:" J. Roe Aff., Ex. P.

191.    The supposed updated report contained no change in the obviously erroneous "finding" — that James was responsible for racial bullying and harassment. *Id.*  This remained contrary to the so-called "report's" stated finding of fact that James Doe had not intended any racial or discriminatory animosity. *Id.*

192.    Principal Oswick doubled down on all of her previous errors.  Oswick's "updated report" once again ignored district policies that required the element of intent to find a student responsible for bullying and harassment.  *Id.*

193.    The so-called "updated report" still contained uninvestigated allegations, such as the death threat and James "bragging about being rich," some of which are directly contradicted by apology letters that Sally Roe was required to write to James Doe following her previous misbehavior.  J. Roe Aff., Ex. O.

194.    Ms. Oswick then issued a new Bullying Investigation Outcome Report regarding Sally Roe's headlock ***only***.  Oswick ignored Sally Roe striking James on two other occasions and ignored her clearly false threats. J. Roe Aff., Ex. P.

195.    One of these false threats was directly witnessed by teacher Ann Grandits. A. Grandits Aff., ¶¶ 20-23.

196.    Upon information and belief, Ms. Oswick did not interview Ms. Grandits as part of her second "investigation."

197.    Ms. Oswick also did not interview James or his parents.  J. Roe Aff., ¶ 12.

198.    Ms. Oswick also failed to include additional relevant allegations into the so-called report, such as Sally Roe striking James on at least two other occasions and Sally Roe obviously

lying about James to get him in trouble for bullying.  J. Roe Aff., <u>Ex. O;</u> A. Grandits Aff., ¶¶ 20-23.

199.     District polices define bullying as "any written text or image, or verbal expression, or physical or electronic act or gesture, or a pattern therefor, that is intended to coerce, intimidate, or cause any physical, mental, or emotional harm to any student." Attorney Miller Aff., <u>Ex. F</u>.

200.     In fact, Ms. Oswick wrote that "There is no dispute that [Sally Roe] placed [James Doe] in a headlock/choked him."  J. Roe Aff., *Ex. P*.  And yet, she found that Sally Roe's intent was not "based on race." *Id*.

201.     To BVSD and Whittier, James' "intent" was somehow not relevant.  Yet Sally Roe's "intent," as a young Black student, was relevant and, in fact, exculpatory—despite evidence clearly showing that her mother, Ms. Richmond, expressly targeted James Doe and the Doe family for being "white liberals." Attorney Miller Aff., <u>Ex. A</u>.

202.     BVSD and Oswick also ignored the Does' other reports of Sally Roe's pattern of bullying, namely, striking James on another occasion, and repeatedly reporting him and other children for "racism" as well as false threats.  Attorney Miller Aff., <u>Exhibit J</u>.

203.     District employee Ms. Richmond's racially harassing and offensive post and thread is still public. Attorney Miller Aff. ¶ 1.

204.     Upon information and belief, BVSD has done nothing to instruct its employee, Ms. Richmond, to take this post down.

205.     BVSD refuses to issue a formal no contact order between Ms. Richmond and James Doe.  J. Roe Aff., <u>Ex.R;</u>  Attorney Miller Aff., <u>Ex. J</u>.  Instead, the District insists on casting out James Doe.

206.    Instead of doing anything to protect James Doe, Principal Oswick instructed James's teacher, Ms. Grandits, not to speak to anyone about the bully reports she filed. A. Grandits Aff., ¶40.  "Free speech," at BVSD only matters when a Black employee is issuing defamatory statements about a defenseless nine-year old white boy.  When a teacher attempts to shield a student from racist rants by a fellow employee, this was immediately censored by Defendant Oswick.

207.    BVSD claims this gag order imposed on Ms. Grandits was to "quell discussion that could compromise the investigation." Attorney Miller Aff., Ex. J.

208.    District Employee Jamillah Richmond was under no such gag order when she and her daughter Sally Roe filed a bully report against James Doe, even though there too the matter was supposedly "under investigation."

209.    Upon information and belief, district employee Ms. Richmond was never censored so as not to "compromise the investigation."  Attorney Miller Aff., Ex. J.  This instruction was reserved only for Ms. Grandits, who is white.

210.    Jamillah Richmond posted her online Facebook thread, which contained demonstrably false statements and the disclosure of confidential educational records, on January 22, 2023.  The investigative report against James Doe issued two days later (January 24, 2023). Attorney Miller Aff., Ex. A;  J. Roe Aff., Ex. N.

211.    BVSD was deliberately indifferent to the hostile environment created by the District and its employee for over a month.  Then, at 9pm in the evening on March 2, 2023, when it finally concluded it's prolonged "investigation" of Ms. Richmond, BVSD formally gave it's stamp of approval to Ms. Richmond's harassment, bullying and intimidation of the Does, concluding that her actions violated no district policies. J. Roe Aff., Ex. T.

212.    The Does requested a copy of James Doe's transcripts on February 9, 2023 so that James may enroll in school elsewhere to escape the hostile environment at BVSD and Whittier Elementary School.  J. Roe Aff., Ex. S.

213.    In response, Principal Oswick refused even this small effort to mitigate the harm caused to James and his family. Principal Oswick refused to immediately release James Doe's transcript.

214.    Although the Doe family has a right to James Doe's educational records under FERPA, Principal Oswick refuses to send the transcript in a timely manner, and Whittier has notified the Does that the school will delay up to the maximum of 45 days to send the transcripts. J. Roe Aff., Ex. S.

215.    The only purpose that could possibly be served by this intentional delay to the routine provision of records is to further interfere with James Doe's education.

216.    Principal Oswick knows that James Doe cannot attend school within the District due to fear for his safety and the hostile environment.  Indeed, Ms. Richmond not only works at Whittier but circulates throughout the District, including but not limited to her supposed social justice activism.  Furthermore, no place, even outside the district, is beyond the reach of Ms. Richmond's harassment via social media.

217.    BVSD's actions have effectively denied James Doe the ability to attend school. He has been constructively expelled, and not only from BVSD: his disciplinary record with its finding of racial harassment and bullying will now follow him everywhere.

218.    James Doe has a discipline record for harassment and bullying resulting from one discriminatory "Bullying Investigation and Outcome Report" that BVSD determined to be "founded" which was contrary to the factual findings in the very same report.

219.    Furthermore, BVSD administrators failed to follow school policies and procedures in the "Investigative and Bullying Report" and refuse to retract their erroneous finding. Attorney Miller Aff., Ex. J; J. Roe Aff., Ex. N, Ex. P.

220.    James Doe's school record and disciplinary file has left his educational future in a state of uncertainty.  J. Roe Aff., ¶ 16.

221.    James Doe has not been to Whittier International Elementary School for more than a month because Defendants refuse to address the racially hostile environment he faces there. J. Roe Aff., ¶4.

222.    James Doe began attending a local private institution (February 27, 2023) admitted on a temporary basis without his transcripts and educational records, after more than a month at home. J. Roe Aff., ¶ 16.

223.    This has been a difficult and emotional transition for James Doe and his family, as the Doe's strongly favor public education, and James Doe has been educated at Whittier since Kindergarten.  J. Roe. Aff, ¶¶ 17, 18.

224.    James is now academically behind and emotionally impaired from missing most of his spring semester.  James Doe is trying to adjust, but the new, specialized school has an entirely different academic focus and a specialized teaching philosophy. J. Roe Aff., ¶ 17.

225.    In addition, it is unclear whether this private institution will even permit James Doe to continue on a permanent basis, once it receives his educational records, which have wrongly condemned him as guilty of bullying and racial harassment.  J. Roe Aff., ¶ 19.

226.    With this clearly erroneous finding in his record, James Doe also risks hostility and rejection from his new community and institution.  *Id*.

227.     As a nine-year-old boy, James Doe is effectively stuck in limbo, struggling to adjust to a completely new educational environment, where he may not even be allowed to continue.

228.     James Doe has had his world turned upside down.  He is confused.  He is upset because he misses his routine, his friends, and his teachers at Whittier.  And he is emotionally resistant to the new school, which has a very different pedagogical philosophy.  On the first day he refused to go, arriving three and a half hours late.  By the fourth day he developed a stomachache, and the teacher called for him to be taken home. J. Roe Aff., ¶ 22.

229.     As of today, the day of filing (March 3, 2023), James Doe is once at home. James was pushed by a classmate, a common enough childhood incident, and something he used to take in stride before BVSD condoned his harassment and bullying, for which BVSD blamed and punished him.  J. Roe Aff., ¶ 22.

230.     The severe emotional and reputational damage inflicted by Jamillah Richmond's public Facebook post and contacting of parents concerning James Doe is ongoing.  If unremedied, it will follow James to any new school he enrolls.  J. Roe Aff., ¶ 20.

231.     BVSD's refusal to take even basic remedial measures against a racially hostile and discriminatory environment at Whittier Elementary School in addition to their gross indifference to James Doe's academic progress and ability to attend school elsewhere, has profoundly affected Plaintiffs family. J. Roe Aff., ¶ 22.

### COUNT 1:   Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d et seq.)
### Hostile Environment (Defendants Boulder Valley School District and Whittier International Elementary School)

232.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

233.     Defendants are the recipients of Federal funds.

234.    Defendants subjected Plaintiffs' minor son James Doe to a racially hostile environment and selectively enforced their policies against him on the basis of race.

235.    Defendants allowed school and district employee, Jamillah Richmond, to violate numerous district policies and federal law, by publicly posting false, misleading, confidential, and racially harassing information about Plaintiffs and their minor son James Doe.

236.    Ms. Richmond and her social media followers called James Doe and Plaintiffs, "white liberal racists" and "white trash," among other insults, and celebrated calls for emotional and physical violence against James Doe.

237.    Jamillah Richmond made others aware that her public Facebook posts referred to Plaintiffs and their minor son James Doe.

238.    It was common knowledge in the Whittier Elementary School community, including among other parents, that Jamillah Richmond's public posts and comments referred to Plaintiffs and their minor son James Doe.

239.    In response to Jamillah Richmond's public actions and statements, other parents at Whittier elementary school called the school guidance counselor with concerns about James.

240.    Plaintiffs and James' teacher reported the hostile environment multiple times to Defendants, including to Principal Sarah Oswick.  Despite being aware of the hostile environment, Defendants failed to take reasonable remedial measures.

241.    In complete disregard for the educational environment and emotional health and well-being of James Doe, Defendants allowed their employee to bully and harass a nine-year-old student and his family.

242.    Ms. Richmond's posts are still on public view, and Defendants have refused to issue any clarification or censure for the misleading and racially harassing post.

243.    Defendants also failed to institute any formal protection for James Doe from Ms. Richmond.  As a school employee and occasional substitute in James' class, she has access to James during the school day.

244.    Defendants' implicit condoning of Ms. Richmond's post and other actions are the result of animus towards James Doe's race, which is white.

245.    James Doe cannot safely attend school at Whittier Elementary School due to the hostile environment.

246.    As a direct and proximate consequence of these ongoing unlawful acts, Plaintiffs and their minor son James Doe continue to suffer damages for the loss of their rights, for pain and suffering, emotional distress, and damages to James' academic and professional future and reputation.

247.    Absent an injunction, Plaintiffs' and their minor son James Doe will suffer irreparable harm because he will be denied his right to a public education, continue to suffer emotional distress and discrimination, suffer damage to his academic record and potential achievements, or be compelled to return to and participate in Defendants' hostile environment and unlawful activities.

248.    Because of Defendants actions, Plaintiffs and their minor son James Doe suffered emotional harm, direct damages, and indirect damages in an amount to be determined at trial.

**COUNT 2:   Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d et seq.)
Discrimination (Defendants Boulder Valley School District and Whittier International
Elementary School)**

249.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

250.    Defendants are the recipients of Federal funds.

251.    Defendants subjected Plaintiffs' minor son James Doe to selective enforcement on account of his race, which is white.

252.    Defendants promoted and enforced different discipline processes and procedures on account of race and announced policies to make white people feel uncomfortable and singled out white students and parents, whom they condemned for having "white privilege."

253.    Plaintiffs' minor child James Doe's complaints of bullying and harassment were subjected to a different process, procedure, and standard than those of a comparator, the Black student Sally Roe.

254.    Plaintiffs' minor child James Doe, when accused of bullying, was subjected to a different discipline process and procedure on account of his race.  James Doe was punished harshly for behavior that did not violate of district policies.  He was provided no due process, no proper notice, and no proper investigation.  James Doe's Black classmate, a direct comparator, engaged in similar or even more egregious conduct towards him, including violent and aggressive behavior, but she was not subjected to any formal reports or punishment on account of her race.

255.    Plaintiffs reported the discriminatory conduct verbally and in writing, including to decision-maker Principal Sarah Oswick.  Despite being aware of the racial discrimination, however, Defendants failed to remediate it in any way and, in fact, made it worse.

256.    Defendant's discriminatory discipline processes and procedures and other actions are the result of animus towards James Doe's race, an animosity toward "white" people widely announced throughout the District by the Superintendent of BVSD.

257.    Defendants also allowed BVSD employee, Jamillah Richmond, to violate numerous district policies and federal law, by publicly posting false, misleading, confidential, and racially harassing information about Plaintiffs and their minor son James Doe.

258.    Ms. Richmond and her social media followers called James Doe and Plaintiffs, "white liberal racists" and "white trash," among other racial insults, and celebrated calls for emotional and physical violence against James Doe.

259.    Jamillah Richmond made others aware that her public Facebook posts referred to Plaintiffs and their minor son James Doe.

260.    It was common knowledge in the Whittier Elementary School community, including among other parents, that Jamillah's public posts and comments referred to Plaintiffs and James Doe.

261.    Defendant's enforced (or failed to enforce) their policies by treating Sally Roe differently from James Doe.  Defendants shielded Sally Roe from consequences while failing to protect James Doe.  Defendants' selective enforcement towards James Doe and tolerance of Sally Roe (and her mother's) behavior was on the basis of racial animus.

262.    As a direct and proximate consequence of this ongoing selective enforcement, Plaintiffs and their minor son James Doe continue to suffer damages for the loss of their rights, for pain and suffering, emotional distress, and damages to James Doe's academic and professional future and reputation.

263.    Without injunctive relief, Plaintiffs' and their minor son James Doe will suffer irreparable harm.  He will be denied his right to a public education, which is a constitutional right in Colorado; he will continue to suffer emotional distress and discrimination; he will suffer damage to his academic record and future education.

264.    Because of Defendants actions, Plaintiffs and their minor son James Doe suffered emotional harm, direct damages, and indirect damages in an amount to be determined at trial.

## COUNT 3:   Fourteenth Amendment (as applied to the states under 42 U.S.C.§ 1983)
### (All Defendants)

265.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

266.    The Equal Protection component of the Due Process Clause guarantees persons the equal protection of the laws and prohibits state actors from treating persons differently on the basis of their race, religion, national origin, or alienage.  Defendants may not treat similarly situation individuals differently on the basis of race.

267.    Defendants promoted and enforced different discipline processes and procedures on account of race.  Defendants announced their animosity toward "white" people on the basis of race.

268.    Plaintiffs' minor child James Doe's complaints of bullying and harassment were subjected to a different process, procedure, and standard than those of comparator Black student Sally Roe.

269.    Plaintiffs' minor child James Doe, when accused of bullying, was subjected to a different discipline process and procedure on account of his race.  James was punished harshly for behavior that was not even a violation of district policies by the plain factual findings against him.  He was provided no due process, no proper notice, and no proper investigation.

270.    By contrast, James' Black classmate Sally Roe engaged in more egregious conduct towards him (and other), including violent behavior.  She was not subjected to any formal reports or punishment on account of her race.

271.    Plaintiffs reported the discriminatory conduct verbally and in writing, including to Principal Sarah Oswick.  Despite being aware of the racial discrimination, however, Defendants failed to remediate this in any way or protect James Doe.  Instead they punished him as harshly as possible.

272.    Under the Fourteenth Amendment of the United States Constitution, the Government may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. I.

273.    Defendants and their employees and agents owed a duty under the due process clause of the Fourteenth Amendment to James Doe's privacy.

274.    Defendants violated Plaintiffs' minor son James Doe's substantive due process right to privacy.

275.    Defendant's employee, Jamillah Richmond, posted private information about James Doe educational records (protected, inter alia, by FERPA) to Facebook on January 22, 2023.  In addition to private information, Ms. Ricmond included false allegations that James Doe had been involved in "other" disciplinary matters and had a disciplinary history involving "racist" comments.

276.    Jamillah Richmond stated that the "parents are called each time (as is district policy)" implying knowledge of prior discipline and practices involving James Doe and other students.

277.    Upon information and belief, there are no other formal reports or bullying investigations involving James Doe and Jamillah Richmond's daughter, Sally Roe.  If there are, Defendants have grossly violated their own policies by failing to notify Plaintiffs.

278.     Jamillah Richmond made others aware that her public Facebook posts referred to Plaintiffs and their minor son James Doe.

279.     It was common knowledge in the Whittier Elementary School community and BVSD, including among other parents, that Jamillah's public posts and comments referred to Plaintiffs and their minor son James Doe.

280.     Plaintiffs reported this violation of their rights and privacy to Principal Sarah Oswick.  Defendants failed to ameliorate this behavior of its employee in any way. Ms. Richmond's posts are still available for public view. Defendants have refused to issue any clarification for the misleading and racially harassing post or the violation of Plaintiffs' and their minor son James Doe's right to privacy.

281.     Defendants' endorse Ms. Richmond's posts and other actions are the result of double standard applied to James Doe on the basis of race.

282.     As a direct and proximate consequence of these ongoing discriminatory acts, Plaintiffs and their minor son James Doe continue to suffer damages for the loss of their rights, for pain and suffering, emotional distress, and damages to James' academic and professional future and reputation.

283.     Absent an injunction, Plaintiffs' and their minor son James Doe will suffer irreparable harm.  James Doe is denied his right to a public education, a constitutional right in Colorado.  James Doe continues to suffer emotional distress and discrimination, suffer damage to his academic record and potential achievements.

284.     Because of Defendants actions, Plaintiffs and their minor son James Doe suffered emotional harm, direct damages, and indirect damages in an amount to be determined at trial.

**COUNT 4:  42 U.S.C. § 1981**
**Discrimination From Full and Equal Benefit of all Laws and Proceedings**
**(All Defendants)**

285.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

286.    Plaintiffs' minor son James Doe is denied the full and equal benefit of proceedings at Whittier Elementary School on account of his race.  A free public education is a constitutional right in the state of Colorado.

287.    42 U.S.C. §1981 is a civil rights statute prohibiting racial discrimination.  Section 1981 states in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  And further:

> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(c).

288.    42 U.S.C. §1981's "equal benefit" clause prohibits discrimination that does not involve contractual relationships.  See e.g., *Farris v. Stepp,* No. 20-cv-02346-DDD-NYW, 2021 U.S. Dist. LEXIS 216297, at *18-21 (D. Colo. Nov. 9, 2021).

289.    Passed shortly after the Civil War, 42 U.S.C. § 1981 is an expression of America's core values, which abhor racial discrimination in all forms.  The Supreme Court instructs that 42 U.S.C. § 1981 applies equally to white persons and not only to historically disadvantaged minorities.  *McDonald v. Santa Fe Trail Transport. Co*., 427 U.S. 273, 295-96 (1976).  "[T]he provision was meant, by its broad terms, to proscribe discrimination in the

making or enforcement of contracts against, or in favor of, any race." *Gratz v. Bollinger*, 539

U.S. 244, 276 n.23, 123 S. Ct. 2411, 2430 (2003).

290.   Principal Sarah Oswick engaged in disciplinary proceedings against James Doe

that failed to follow district policies and procedures.  Oswick applied the same policies

differently to James Doe, a white, defenseless 9-year old boy.  Instead, Oswick privileged the far

worse behavior of Sally Roe (and her mother) because they are Black.

291.   BVSD had publicly announced its intention to discriminate on the basis of race in

public education, especially school discipline, at least since 2020.

292.   In particular, in direct violation of BVSD policies, Ms. Oswick ignored the

"intent" element of the bullying policy and despite finding that James Doe had no intent to cause

harm or bully another student.  She acted with racial animus and found James Doe guilty of

bullying and punished him harshly, making him a pariah in the school.

293.   In addition, Ms. Oswick acted with racial animus by ignoring basic disciplinary

proceeding requirements of district policies, which required proper notice and an opportunity for

James Doe and his family to respond to any new allegations.  Ms. Oswick intentionally provided

James Doe and his family no meaningful opportunity to respond to new allegations of supposed

"racism."  Instead, she added these incendiary allegations to a "Bully and Investigation Report"

without reasonable investigation.

294.   By contrast, with a direct comparator Sally Roe who is Black, Principal Oswick

responded to complaints (and those of her Black mother, a BVSD employee).  Yet, acting with

racial animus, Oswick ignored complaints of a more serious nature from James Doe and

Plaintiffs, who are white.

295.    Principal Oswick failed to provide James Doe the full benefit of all district disciplinary proceedings and policies, because of his race.

296.    But for Ms. Oswick's failure to provide the full and equal benefit of all district policies and proceedings to James Doe, James and Plaintiffs would not have suffered damages, including James' loss of educational benefits, to which he is constitutionally entitled, pain and suffering, emotional distress, and damages to James' academic and professional future and reputation.

297.    Plaintiff is currently unable to attend Whittier Elementary school and has been forced out of school since January 24, 2023 due to discriminatory acts of BVSD and Ms. Oswick.

298.    Absent injunctive relief, Plaintiff's and their minor son James Doe will suffer irreparable harm because James will be denied his right to a public education, continue to suffer emotional distress and discrimination, suffer damage to his academic progress and record, or be compelled to return to and participate in Defendants hostile and discriminatory environment.

299.    Because of Defendant's actions, Plaintiff suffered emotional harm, direct damages, and indirect damages in an amount to be determined at trial.

**COUNT 5:   Colorado Rev. Stat. § 24-34-601**
**Discrimination in Places of Public Accommodation (All Defendants)**

300.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

301.    Whittier Elementary School is an educational institution and a place of public accommodation under CO. Rev. Stat § 24-34-601(1).

302.     Plaintiffs and their minor son James Doe were denied the full and equal enjoyment of the goods, service, facilities, privileges, advantages, and accommodations on account of their race.

303.     Plaintiffs and their minor son James Doe had their presence at a place of public accommodation made "unwelcome, objectionable, unacceptable, or undesirable because of" their "race."

304.     As a direct and proximate consequence of these ongoing unlawful acts, Plaintiffs and their minor son James Doe continue to suffer damages for the loss of their rights, for pain and suffering, emotional distress, and damages to James' academic and professional future and reputation.

305.     Since January 24, 2023, Plaintiff has been unable to attend Whittier Elementary school due to the discrimination and ongoing hostile environment.

306.     Plaintiff's situation is of such a nature that pursuing administrative remedies would not provide a timely and reasonable relief and would cause irreparable harm.  CO. Rev. Stat. 24-34-306(14).

307.     Absent an injunction, Plaintiff's and their minor son James Doe will suffer irreparable harm because James will be and is denied his right to a public education, a constitutional right in the state of Colorado; he continues to suffer emotional distress and discrimination; he continues to suffer damage to his education.

308.     Because of Defendant's actions, Plaintiff suffered emotional harm, direct damages, and indirect damages in an amount to be determined at trial.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, the Plaintiffs pray that, on all counts, this Honorable Court enter the follow relief:

    i.    ORDER, pursuant to Rule 65, Defendants to be restrained and enjoined from engaging in discriminatory discipline policies, practices, and procedures against the Does and their minor child;

    ii.    ORDER the immediate removal/rescission of the discriminatory "Bully Investigation and Report" holding Sally Roe's bully accusations against James Doe "founded" as lacking in substantial evidence, contrary to its own stated findings of fact, and clearly erroneous;

    iii.    ORDER, pursuant to Rule 65, that Defendants be restrained and enjoined from disregarding District policies with respect to the behavior and actions of District and school employee Jamillah Richmond;

    iv.    ORDER Defendants to withdraw and remove their employee, Ms. Richmond's defamatory and false Facebook posts in violation of FERPA;

    v.    ORDER, pursuant to Rule 65, Defendants to take basic remedial measures against the racially hostile environment at Whittier Elementary School, including issuing a formal written "no-contact" order for employee Jamillah Richmond and student James Doe;

    vi.    ORDER, James Doe immediately returned to school under such conditions and remedial measures that safeguard his public education;

    vii.    ORDER, pursuant to Rule 65, basic remedial measures against the racially hostile environment at Whittier Elementary School, including but not limited to the expungement of James Doe's disciplinary record;

    viii.    ORDER, pursuant to Rule 65, enjoining Defendants to immediately release James Doe transcripts to the Doe family;

    ix.    ORDER, pursuant to Rule 65, Defendants to enforce their policies and procedures to investigate the bullying of James Doe by both BVSD employee Jamillah Richmond, and her daughter, Sally Roe;

    x.    ORDER BVSD and Whittier to pay Plaintiffs compensatory damages;

    xi.    ORDER BVSD and Whittier to pay Plaintiffs punitive damages;

    xii.    ORDER BVSD and Whittier to pay Plaintiffs' reasonable attorneys fees and costs under 42 U.S.C. 1988(b) and applicable state laws as well as post and pre-judgment interest and costs of suit; and

xiii.   Enter such other equitable or legal relief as the Court may deem just, equitable, and proper under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**

Dated: March 3, 2023

Respectfully submitted,

Michael Thad Allen
Samantha K. Harris
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT 06375
TEL: (610) 634-8258
mallen@allenharrislaw.com
sharris@allenharrislaw.com

*for PLAINTIFFS*